## D. M. GOODRICH v. T. W. WILLIAMSON AND OKLAHOMA NATIONAL BANK.

(Filed Aug. 25, 1899.)

1. INTERPLEADER—*When Allowable.* This is an action upon a promissory note, brought by the assignee, Goodrich, aganist Williamson, the maker, to recover the amount thereof. The defendant, the Oklahoma National Bank, intervened, charging that the note was executed by Williamson to M. I. Dowden, in fraud of the creditors of E. W. Dowden, of whom the interpleader was one, and asked that the liability claimed in behalf of the plaintiff should be disallowed, and his claim thereto set aside, and the proceeds of the note awarded to the bank thus interpleading. *Held:* That this proceeding is not contemplated either by sections 36, 41, 45-a or 496 of the Code of Civil Procedure, and will not be permitted, without the consent of the plaintiff.

2. DEFENDANTS—*When Parties Necessary As.* In a legal action like the present, in which the plaintiff seeks nothing but a money judgment, he cannot be compelled to bring in and to admit other parties than those whom he has chosen as defendants.

3. SAME. In a case like this, in which the interp'eader, makes charges of fraud against M. I. Dowden and D. W. Dowden, and seeks to recover money alleged to be theirs, from a third person, the Dowdens are necessary parties to the proceeding.

4. INTERPLEADER—*Only Allowed on Legal Demand—Adverse Parties Must Claim Same Debt.* Section 43 of the Code of Civil Procedure does not justify the relief sought for by the defendant, Williamson, in filing his affidavit in this cause. Under this section of the

Statutes, in order to entitle him to the order of the court sought for and obtained below, there must have been a privity between all the parties, the debt claimed by the interpleader and the amount thereof must have been the same, and the claims of both the interpleader and the plaintiff must be strictly legal, and equitable claims are not provided for by this statute.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before J. R. Keaton, District Judge.*

*Trimble & Braley, John A. Eaton* and *H. H. Howard,* for plaintiff in error.

*R. G. Hays* and *J. S. Jenkins,* for defendant in error, the Oklahoma National Bank.

*B. F. Burwell,* for defendant in error, T. W. Williamson.

### STATEMENT OF THE CASE.

This is a suit brought to recover the sum of $5,000.00, the amount of a promissory note dated August 17, 1895, given by the defendant Williamson, to Mrs. M. I. Dowden, payable in a year, and assigned for value, as declared in the petition, on August 19, 1897, to Goodrich. The suit was begun September 23, 1896. Thereafter, on September 29, 1896, the Oklahoma National Bank, upon its own motion, and without leave, filed a pleading in the cause which it termed an "interplea."

This interplea averred that on December 13, 1895, it had recovered a judgment against E. W. Dowden, the husband of M. I. Dowden, for the sum of $3,429.00; that an execution had been issued thereupon and returned unsatisfied; that it had obtained another judgment for the sum of $7,634.00, with an attorney's fee of five hundred dollars,

upon April 8, 1895, in the same court against James Geary, J. F. Stiles and E. W. Dowden. Real estate was attached in that action, which was not disposed of at the time of the filing of the interplea. Execution was also issued and was returned not satisfied.

The averment further made was that on August 17, 1895, Williamson and E. W. Dowden were respectively owners of 125 shares of stock in the Dowden-Williamson Grocer company; that Dowden's stock, with the exception of a single share, was held in the name of his wife, the defendant in the action, and that on that day Dowden made a pretended sale of his stock to Williamson for $21,-000.00, of which $6,000.00 was cash and the balance in three notes for $5,000.00 each, due in one, two and three years, one of which is the note sued upon by Goodrich.

It averred that the sale to Williamson was made for the purpose of hindering and defrauding creditors, and that the note for $5,000.00 sued upon here was fraudulently transferred to Goodrich, without consideration, and that there was then pending in the same court an action against E. W. Dowden, M. I. Dowden and T. W. Williamson and the Dowden-Williamson Grocer Company, to set aside the sale of the stock, and apply the same to the satisfaction of the judgments above mentioned.

The prayer of the interplea was that when judgment was rendered against Williamson, the Oklahoma National bank, interpleading, should be subrogated to all the apparent rights of the plaintiff, Goodrich, in the collection of the judgment, and that the proceeds should be applied in satisfaction of the judgments of the bank.

The plaintiff moved to strike the interplea from the files, which was overruled. His demurrer, which was then

filed, was sustained, because the interplea, while assert-
ing the invalidity of the   transactions   mentioned, also
sought to uphold them upon other grounds.   The inter-
plea having been thereupon amended, and the prayer
changed so as to ask that "If, in the event plaintiff fails
in said cause (meaning the case pending to set aside the
transfer of stock to Williamson, as fraudulent and sub-
jected to the payment of judgments of the bank) to sub-
ject said stock to the payment of said. indebtedness, and
that the interpleader be subrogated to all the apparent
rights of the plaintiff."

A demurrer to the amended interplea was overruled;
exceptions were reserved upon the rulings of the court
overruling the motion to strike out the interplea, and
upon the demurrers.   The   plaintiff,   Goodrich,   then
answered the interplea, denying the averments of fraud on
his part, averring that the note sued upon was transferred
to him in good faith and for value.   The defendant, Wil-
liamson, before trial filed an affidavit in the cause, in
order to avail himself of sec. 3915 of the Statutes of 1893,
wherein he alleged that he executed the note in good
faith; that the Oklahoma National bank, without collusion
with the defendant, made a claim to the subject of the
action, and that the affiant was ready to pay the money
due as the court should direct, and prayed that he be
permitted to pay the amount into court and be discharged
from liability thereon.   This prayer was granted, over the
objection and exception of the plaintiff, and the money
paid into court ,and the note surrendered to Williamson
in obedience to the mandate of the court.   The defendant
thereafter took no part in the action, which proceeded
to trial before a jury on the issues formed by the interplea.

the answer of the plaintiff, the amendment to the answer. and the reply of the bank.

Opinion of the court by

McAtee, J.: The errors assigned by the plaintiff are argued upon the proposition that the action was a suit to recover the amount due upon a promissory note, that the bank should not have been permitted to intervene, and that Williamson should not have been permitted to pay the money into court, and that the note should not have been delivered to him.

The provisions of the Code of Civil Procedure, which are principally relied upon by the bank to sustain its right of intervention, are secs. 36 and 41 of the Code of Civil Procedure, which reads as follows:

"(3908). Sec. 36. Any person may be made a defendant who has or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the   question   involved therein."

"(3913). Sec. 41. The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

In construing similar provisions of the codes of civil precedure, the supreme courts of the different states have uniformly sustained the contention of the plaintiff in error.

In *Chapman v. Forbes,* 125 N. Y. 532, 26 N. E. 3, the plaintiff charged that George P. Breen, as agent of the plaintiff's testatrix, received $1,200.00, which was paid by him to defendant for the use of the estate of the plain-

tiff's testatrix, and that the defendant refused to pay the same to plaintiff. The defendant denied the indebtedness, and alleged that he received the money, but that it was the individual property of Thomas H. Breen whose assignee had sued to recover it and that the fund was subject to equities existing between Breen and the defendant; and the defendant moved to make Williams, the assignee of Thomas H. Breen, a party defendant, upon the ground that sec. 452 of the New York code did not authorize the proceeding, and that the court could not change a legal action into a suit in equity at the instance of a third party, and against his will.

The court, by Judge Peckham, now a justice of the supreme court of the United States, in construing the statute in question said as to sec. 122 of the New York code (which is identical with sec. 41 of the Oklahoma Code of Civil Procedure) that:

"The decisions of our courts have been quite uniform that the section above quoted referred to parties in what, under the old practice, would have been suits in equity, and that it was never intended to make it incumbent upon a plaintiff in an action at law, to sue any other than the parties he should choose," and that *"McMahon v. Allen,* 12 How. Pr. 39, gave what seems to me to be a correct definition of the meaning of the old code (sec. 41 of the Oklahoma Code) with reference to a complete determination of the controversy. He said 'that was where there are persons, not parties, whose rights must be ascertained and settled before the rights of the parties to a suit can be determined.' Judged by that standard, the controversy between these parties can be completely determined without the presence of any other person. The plaintiff claims judgment for money which he alleges defendant received belonging to plaintiff. The defendant sets up facts which, if proved, constitute a perfect defense to

the action. The presence of no other person is required to finally determine the issue, and the determination affects no other persons' rights.

"There is nothing in the added portion of sec. 452 of the new code which would alter the rule. The portion added is this: 'And when a person not a party to the action has an interest in the subject matter thereof, or in real property, the title to which may be in any manner affected by the judgment, and makes application to the court to be made a party, it must direct him to be brought in by proper amendment.' The person not a party to action in this case is the assignee of the person giving the money to the defendant, and such party has no interest in the subject of this action within the meaning of the section referred to. The subject of the action is to obtain payment of the debt due plaintiff from defendant. The facts upon which the debt is based may be of an equitable nature, but the action is to recover a debt. The defendant by way of defense, denies the existence of the alleged facts upon which the plaintiff bases his claim. The defense, if proved, is a good one. He need show nothing further than that the money was not the money of plaintiff. Whose money it was, if it did not belong to the plaintiff, is a matter in which the plaintiff has not the slightest interest, nor is such an investigation the subject of this action. The plaintiff does not seek a judgment in this action for any money of the assignor which he deposited with the defendant. And a judgment in plaintiff's favor has absolutely no effect upon any rights which the assignee may have against the defendant. The assignor, therefore, cannot have an interest in the subject of this action, within the meaning of the code.

"It is impossible to see how the assignee can have such interest when no judgment that the court can give can in any way affect his claim against the defendant, and where a complete determination of the controversy between the plaintiff and defendant can be had without

first ascertaining or settling the rights of any other person. In *People v. Albany & Vt. R. R. Co.*, 15 Hun. 126, the supreme court at general term said that the views expressed in *Webster v. Bond*, 9 Hun. 437, in regard to the application of sec. 122 of the old code should apply to sec. 452 of the new. The Webster case held that a person bringing a legal action cannot be compelled to sue any person, except such as he may elect to sue. If the amendment in this case were allowed, the defendant would succeed in converting a plain action at law into a suit at equity, and thereby instituting an investigation as to the ownership of a fund in the hands of the trustees, and obtaining a decree in relation thereto."

Judge Peckham, in passing upon that case, further said: "Nor does the defendant obtain any right to compel the plaintiff to bring in the assignee as a party under sec. 447 of the new code," (which is identical with section 36 of the Oklahoma Code of Civil Procedure).

And the supreme court of New York, there speaking through him on the latter occasion, said that:

"This section does not enlarge the right of the defendant beyond what he has under sec. 452 (sec. 41 of the Oklahoma code). There can be a complete determination or settlement of the question involved in this action as between the parties to it, without the presence of any one else. And as to the controversy between the plaintiff and the defendant, no one else has an interest therein adverse to the plaintiff.

"The order made in this case was a discretionary one. The court had no power to make it."

It was also said in *Britton v. Bohde B. Co.*, etc., 85 Hun. 449, that:

"It is not only in a case like this, where the party seeking to intervene claims at most a mere equitable lien upon the subject of the action, that he is denied the right to

intervene, but the rule seems to be the same where he claims to be the actual owner.

"This action is to recover the sum of $800.00, alleged to be due from the defendant on account of a mortgage. * * * The appellant seeks to intervene on the ground that this sum really belongs to it. We think this fact, if true, gave the appellant no right to intervene. If the plaintiff is not the owner of the claim he will be defeated in his action. But even if he should wrongly succeed therein, the appellant would no-wise be injured. If he has a valid claim against the defendant, it may sue for it, and the recovery in this action will no wise bar its claim. This action is an action at law, and it is settled by authority that in such action the plaintiff has the privilege of determining what parties he will proceed against, and that other parties cannot intrude themselves into the action aaginst his will."

And it was said in *Coursen v. Hamblin*, 2 Duer. 513, that: "As the plaintiff has brought a legal action and seeks nothing but a money judgment, he cannot be compelled to bring in other parties than the one he has chosen to make defendant." To the same effect are: *McConihe v. Hollister*, 19 Wis. 269; *Pennoyer v. Allen*, 50 Wis. 208.

In *Boyer v. Hamilton*, 21 Mo. App. 520, a firm named Melton & Claphamson owed Hamilton a sum of money upon which an account had been stated. Boyer bought the account of Hamilton, and drew on Melton & Claphamson for the amount. Boyer's draft was dishonored. He sued Hamilton, and Melton & Claphamson, the firm, answered that they had owed Hamilton as claimed in the petition, and that their obligation had been assigned to Boyer, but said that a firm called Howard & Kreiter had a claim on the fund. The court ordered Howard & Kreiter to be made defendants, and they thereupon filed an answer asserting their rights.

The court said upon these facts, that:

"The entire proceeding in regard to the intervention of Howard & Kreiter was irregular. The court seemed to have treated the proceeding in the nature of an interpleader, losing sight of the principle that the debtor alone can maintain such a bill, and not the creditor. (*Hathaway v. Foy*, 40 Mo. 540.) The fund in controversy was never in possession of the court, and the court could never have made any order in regard to its distribution, even if the pleadings and evidence would have warranted it. The only disposition which can be made of the case here, is to direct such a judgment as is called for by the pleadings and uncontroverted evidence. The defendants, Howard & Kreiter, even if recognized as parties to this proceeding, have given no legal evidence to defeat the plaintiff's recovery. If they have any valid claim on the fund in controversy as against the plaintiff, they can assert it by some method in conformity with established rules of procedure, in an independent action against him. There is nothing even to show that he is not financially responsible. The defendants, Melton & Claphamson, have admitted their liability by their answer, and no reason exists why judgment should not be rendered against them.

"All the judges concurring, the judgment is reversed, and the cause remanded, with directions to the trial court to strike the answer of Howard & Kreiter, and the plaintiff's reply thereto, from the files, and to render judgment in favor of the plaintiff against the defendants, Melton & Claphamson, for the amount in controversy, with interest from date of the institution of the suit, and to dismiss the cause as to the defendant, Hamilton."

Section 1993 of the Revised Statutes of Missouri of 1889, is identical with sec. 36 of the Code of Civil Procedure of Oklahoma.

In *Kortjohn v. Seimers*,   29 Mo. App. 271, the plaintiff as receiver of Singer & Berg sued defendant, who was a

trustee named in a deed of trust executed by one Noenninger in favor of said Singer & Berg. Defendant had sold the property named in the deed of trust, and refused to pay the proceeds to plaintiff, claiming that the notes were given in payment of work done under a contract, the terms of which had been violated, that for such violation Noenninger had a cause of action against Singer & Berg, and a claim upon the fund in suit. Noenninger applied in the court of original jurisdiction to be made a party defendant, and filed an answer; this application was sustained, and the court said of this practice:

"Our statute provides that any person may be made a defendant who has or claims an interest in the controversy adverse to plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved therein. (Rev. Stat. sec. 3465.) This means that a plaintiff may make any party thus situated a defendant to the action, and not that any party may insist on being made a defendant to any legal controversy which is likely to affect his interest in some collateral manner. The latter construction would lead to the most absurd results, and results entirely at variance with our methods of legal procedure. We have discussed this proposition in *Boyer v. Hamilton*, 21 Mo. App. 521, 524, to which we refer. * * * In fact, the entire proceeding of allowing Noenninger to come in and defend, was irregular from beginning to end."

*Boston v. Wright*, 3 Kans. 220, was an attachment suit in which certain real estate was taken, and Wright appeared and moved for a dissolution of the attachment. The motion was overruled and upon his application, Wright was made a party defendant, and was permitted to file an answer, alleging that he was the real owner of the real estate. A verdict was found for him, and Boston

took a writ of error. In that case, in construing section 47 of the Code of Civil Procedure of Kansas (which is identical with sec. 41 of the Oklahoma Code) the court said that: "The controversy between parties in an action is determined by the pleadings, of which, as we have before seen, attachment proceedings constitute no part. And with that controversy in the present case, as between Boston and McGuire, no one will say that Wright had or could have had anything to do. Indeed, his answer shows that he has no interest whatever in it. If these views be correct, the section referred to gives no authority for making Wright a party defendant in this cause. We think that the court erred in making the order, and that the error was such as would prejudice the substantial rights of the plaintiff. The court should have granted the motion for a new trial." The judgment was reversed.

This decision was rendered before the enactment of sec. 45-a of the Kansas Code (which is sec. 45-a of the Oklahoma Code of Civil Procedure) and the cause was governed by the sections of the code which are identical with secs. 36 and 41 of the Code of Civil Procedure of Oklahoma.

And it was said by Pomeroy in his Remedies and Remedial Rights, sec. 424 that:

"Sec. 424. The occasions on which a third person may intervene in a pending action are very few. The scope of the provision is exceedingly limited; it has been said that its operation is confined to those cases in which a bill of interpleader would have been permitted, under the former practice, to accomplish the same end. It is certain that the right to intervene can only be exercised in actions for the recovery of real or personal property. It does not exist, therefore, in an action to recover money; * * * nor in an action in the nature of a creditor's suit, to reach

a surplus of money in certain person's hands; &ast; &ast; &ast; nor in any action on contract for the recovery of debt or damages."

The section last referred to, sec. 45 of the Code of Civil Procedure, provided that: "Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit, made by himself, agent or attorney, and issues may be made upon such interpleader, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay." This is also relied upon by the defendants in error.

Upon a similar statute in Missouri, it was said by the supreme court of that state, that: "The section referred to contemplates that only persons who claim to own the property attached may interplead." (*Abernathy v. Whitehead*, 69 Mo. 28.) And: "An interplea in an attachment suit is a remedy conferred by the statute. Its uses, therefore, must be limited to the cases in which it is authorized by law." (*Gordon v. McCurdy*, 28 Mo. 304.)

And in *Spooner v. Ross*, 24 Mo. App. 599, it was said, that:

"An interplea is in the nature of a replevin, engrafted by statute on the proceeding in attachment. (*Bengert v. Borchert*, 59 Mo. 85.) Certainly, then, it will not lie where the action of replevin will not. The very object of the action in replevin is the recovery of specific personal property, in kind. It partakes in this respect of the nature of a proceeding *in rem*. (Wells Replev. secs. 33-34.) &ast; &ast; &ast; Especially is this true of an interplea. It is a claim for the recovery of the possession of the specific thing. Unlike the action of replevin, no money judgment in damages can be awarded in lieu of the specific property claimed. It is peculiarly a possessory action, 'the right

to present possession of the property being the principal question in controversy.' (Wells Replev. sec. 39.) It involves the exclusive right of the claimant to the immediate possession of the chattel, and the fact of the wrongful detention thereof by the defendant as against the claimant. (*Ib.* 46, 94, 98; *Hunt v. Chambers,* 1 Zab. 21 N. Y. 623; *Kingsberry v. Buchanan,* 11 Iowa 397; *Noble v. Epperly,* 6 Port. [Ind.] 416.)"

Section 496 of the Code of Civil Procedure is also cited by the defendant in error as furnishing authority for proceeding by interplea here. It provides that:

"When a judgment debtor has not personal or real property, subject to levy on execution, sufficient to satisfy the judgment, any equitable interest which he may have in real estate, as mortgagor, mortgagee or otherwise, or any interest he may have in any banking, turnpike, bridge or other joint stock company, or any interest he may have in any money, contracts, claims or choses in action, due or to become due to him, or in any judgment or decree, or any money, goods or effects which he may have in the possession of any person, body politic or corporate, shall be subject to the payment of such judgment, by action or as hereinafter provided."

It does not authorize the interposition of the claims of the interpleader in this action brought by the plaintiff, Goodrich, upon the single issue of the liability of the defendant, Williamson, to him upon a promissory note. The relief sought for by the interpleader changed the issue completely. And the appearance and admissions of Williamson having determined the issue of the case in favor of the plaintiff, the only issue in the cause was thereby resolved.

Under the proceeding which was initiated by the interplea and the proceedings thereunder, other parties became necessary to the cause, other issues were raised

and the proceeding thus added was of a purely equitable nature, involving allegations of fraud against the plaintiff, Goodrich, against M. I. Dowden and E. W. Dowden. We cannot find that any such scope has ever been given or attempted to be established under the section in question.

The only authority cited in support of the proposition which seems to call for any comment, is that of *Ludes v. Horde and Baubright*, 9 Kans. 36, which was an action brought by the judgment creditor against the judgment debtor, in which an execution had been returned unsatisfied, and in which it was sought to secure personal property to the payment of the debts of the defendant, L. The right to this remedy was sustained by the supreme court of Kansas, inasmuch as it is expressly provided for in the statute.

The remedy provided for in the statute is in the nature of a creditor's bill, but it was never taught nor heard of in the practice and proceeding in equity upon a creditor's bill that the creditor seeking that remedy could intervene in a legal action like the present, involving only the determination of liability on a promissory note between the plaintiff and defendant, and be permitted to annex thereto a general remedy in behalf of creditors to secure the proceeds of the judgment in such a case upon allegations of fraud such as the creditor here seeks by this interpleader.

And the statute here expressly provides that the proceeding shall be "by action," by which we understand that the creditor shall be the plaintiff and the debtor the defendant, and that the action shall be an original action and not an intervention in a legal proceeding already be-

gun by other persons. There is nothing in the language of the statute from which such right can be inferred. The reasoning hitherto expressed herein with reference to the attempted construction of secs. 36 and 41 and 45-a of the Code of Civil Procedure is applicable to the attempt to exercise the right sought for here under the section of the statute now under consideration.

It is also contended by the plaintiff that M. I. Dowden and E. W. Dowden are necessary parties to the proceeding; that their interests in the subject matter were affected by the judgment of the court, and that they should have been brought in and made parties defendant. We think this contention should be sustained.

The whole transaction is charged to have been fraudulent, on the part of both E. W. Dowden and M. I. Dowden. If it was fraudulent it was void. The note for $5,000.00 sued upon by Goodrich was assigned to him in discharge of former indebtedness claimed by him, and by M. I. Dowden to be due from the latter to Goodrich. If the contention of the interplea should be sustained, the prior indebtedness of M. I. Dowden to Goodrich would remain unpaid. The interplea was in substance a creditor's bill, and sought to appropriate the amount in Williamson's hands to the payment of a debt claimed to be due to the interpleader, and to deprive Goodrich and M. I. Dowden of the proceeds. The effort was made upon the explicit charge of fraud, against both M. I. Dowden and E. W. Dowden. We think the court should not have proceeded to the trial of the issues without the presence of both these parties.

It is said in Pomeroy on Remedies and Remedial Rights, sec. 347, that:

"In an action by a judgment creditor to reach the equitable assets of the debtor in his own hands, or to reach property which has been transferred to other persons, or property which is held by other persons under a state of facts that the equitable ownership is vested in the debtor, the judgment debtor is himself an indispensable party defendant, and the suit cannot be carried to final judgment without him." (Citing many cases. *Child v. Burdett et al.,* 4 Paige, 309; *Beck v. Burdett,* 1 Paige, 305.)

And it was said in Wait on Fraudulent Conveyances, p. 196, that:

"Where the suit prosecuted is purely a creditor's bill embodying the elements of a bill of recovery, the debtor's presence would seem to be essential to the jurisdiction of the court."

If the bank interpleading here could sustain this contention, the effect would be to deprive M. I. Dowden of the credit to which she would be entitled in consequence of her assignment of the note in suit here to plaintiff, and to that contention she was a material party since the interpleader sought an order of the court that the money, the proceeds of the note assigned by her to the plaintiff, should be paid over immediately to the interpleader. It has been shown and held here that the intervention cannot be sustained. But if it could have been held otherwise she should have been made a party. So, also, we think, should E. W. Dowden, upon the same authorities and the same reasoning.

It is objected that all parties concerned in the determination of this case are not made parties here, and that no service of case-made has been made upon Williamson, which is true. Williamson has no concern in the case-made. Prior to the taking of any testimony, while the only questions which

arose were those upon the pleadings and the attempted intervention, and upon the affidavit of Williamson, Williamson admitted his liability in full, was ordered by the court to pay over the amount of the indebtedness to the clerk of the court, and thereupon was discharged. To this order of the court an exception was reserved.

It is contended by the plaintiff in error that, inasmuch as this was an action at law in which the right of the plaintiff in error to the amount of money represented by the promissory note sued upon was asserted, and inasmuch as the bank was wrongfully permitted to intervene and assert its claim, by which new issues were raised and new parties made necessary, and delay was caused, and impediments permitted to the assertion of Goodrich's claim, that the order of the court was erroneous, whereby Williamson was permitted to pay the amount due upon the note sued upon into court, and the note taken from the possession of Goodrich and transferred to the possession of Williamson, and to the order of the court which undertook to discharge Williamson from further liability.

The provisions of sec. 43 of the Code of Civil Procedure are set up as a justification for the order of the court, and as providing for it.

Section 43 provides that:

"(3915) Sec. 43. Upon affidavit of a defendant, before answer, in an action upon contract, or for the recovery of personal property, that some third party, without collusion with him, has or makes a claim to the subject of the action, and that he is ready to pay or dispose of the same, as the court may direct, the court may make an order for the safe keeping, or the payment, or deposit in court, or delivery of the subject of the action, to such persons as it may direct, and an order requiring such third party to appear, in a reasonable time, and maintain or relin-

quish his claim against the defendant. If such third party, being served with a copy of the order, by the sheriff or such other person as the court may direct, fail to appear, the court may declare him barred of all claim in respect to the subject of the action, against the defendant therein. If such third party appear, he shall be allowed to make himself defendant in the action, in lieu of the original defendant, who shall be discharged from all liability to either of the other parties in respect to the subject of the action, upon his compliance with the order of the court for the payment, deposit or delivery thereof."

We do not think the statute provides the relief contended for by the defendant in error, since it is held that such statute as the present does not alter the settled principles which govern the right of interpleader (3 Pomeroy Eq. Juris. sec. 1329.)

In order to entitle the interpleader to this remedy certain conditions must exist which are not found in this case. There must, in the first place, exist a privity between all parties, and the debt and duty and the amount claimed by each of the defendants must be the same.

It was said in Story's Equity Pleading, sec. 293, that:

"Bills of interpleader do not ordinarily lie, except in cases of privity of some sort between all the parties, such as privity of estate, or title, or contract, and where the claim by all is of the same nature and character. But where the claimants assert their rights under adverse titles, and not in privity, and where their claims are of different natures, the bill is wholly unmaintainable."

And it is said in 2 Story's Equity Jurisprudence, that:

"In cases of adverse independent titles, the party holding the property must defend himself as well as he can at law; and he is not entitled to the assistance of a court of equity; for that would be to assume the right to try merely legal titles upon a controversy between different

parties, where there is no privity of contract be⁺ween them and the third person who calls for an interpleader." (2 Story Eq. Jur. (11th Ed.) sec. 820.)

In *Pfister v. Wade*, 56 Cal. 43, plaintiff's complaint was that they had purchased from one Trenouth, assignor of defendant, Bliss, certain wheat in the warehouse of defendant, Wade, for which plaintiffs agreed to pay Trenouth $2,889.85, then due; that Wade claimed a lien on the wheat for $2,657.53 and refused to deliver it unless plaintiffs would retain the amount from the price of the wheat. The defendant, Bliss, claimed all of the proceeds and refused Wade's claim. The prayer was that the various defendants should be compelled to interplead upon their respective claims.

The court said that:

"It is an inflexible rule that the thing to which the parties make adverse claims shall be one and the same thing; or, in other words, the claims must be identical."

And that:

"Where the claims made by the defendants are of different amounts, they never can be identical."

And that:

"The claims of the defendants are not the same, nor of the same nature. Each, as alleged, arises out of a separate and independent contract with the plaintiffs by defendants severally."

And that:

"The right to the remedy by interpleader is founded, however, not on the consideration that a man may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability."

And that:

"A vendee sued by his vendor for the price of goods, and by a third party in trover for their value, cannot main-

tain an interpleader suit, since the claims made against him are not identical; the one seeking to have the benefit of a contract, the other claiming the value of chattels which are the subject of it."

The court further said:

"There is another reason why the present bill cannot be maintained. It is essential to the right of interpleader, that the person standing in the position of a stakeholder is ignorant of the rights of the different claimants to the fund held by him; or, at least that there is some doubt as to which of them is entitled to the fund, so that he cannot safely pay it to either. * * * Plaintiffs here cannot be permitted to claim that they are ignorant of the facts upon which the claims of defendants respectively are based. * * * The plaintiffs have acknowledged a right by way of lien, in some sum, in defendant Wade, by taking a transfer from him, with the promise to pay him the sum, whatever, it may be, for which he had the property in pawn. Thus they have incurred a separate liability to him; while they have assumed such an obligation as compels them for their own protection to contest the right of defendant Bliss to a portion of the purchase price.

"To recapitulate: It appears from the complaint that plaintiffs are not mere stakeholders, without any interest or claim of interest in the fund; that the claims of defendants are not identical in amount; that the claims in other respects do not relate to the same debt or duty; that the plaintiffs have acknowledged the validity to some extent, of the claim of one of the defendants, and incurred a separate liability to him; that the claims of each of the defendants arises out of a separate and independent contract. Judgment reversed."

To the same effect is *McConley v. Sears,* 34 Pac. Rep. 814 (Idaho), in which sec. 4109 of the statutes of that state were construed, which is similar to section 43 here relied upon. (*Bank v. Skillings,* 132 Mass. 410; *Railroad*

*Co. v. Arthur,* 90 N. Y. 234; *Dodge v. Lawson,* 19 N. Y. Supp. 904.)

It is also conceded by the plaintiff in error that, in order to sustain the right of interpleader under this section, Williamson must not have incurred an independent and unconditional liability to that which is claimed by the bank, and that since the pleadings charge the defendant with two separate and distinct liabilities, an affidavit for interpleader will not lie to bind both in one suit.

In *Atoka Mining Co. v. Hodges,* 59 Fed. 836, the mining company in 1887 leased a coal claim from a syndicate composed of Davis, Nelson, Phillips and Standley. After $50.00 had been paid to the lessees, the company notified the lessors that there was no coal on the claim, and the $50.00 was returned. In 1888, the company took another lease from a syndicate composed of Adams, Davis, James, Hodges and McBride. In 1889 Standley, Phillips and another brought suit against the coal company for rent of the claim under the lease of 1887. The company answered that it owed some one $300.00 for coal mined on the leased premises; that it had taken the two leases before mentioned; that the two sets of lessors claimed title adversely to each other; that the defendant was induced to take the first lease by misrepresentation, and that if it paid under the lease pleaded it would be obliged to pay under the second as well, and asked that the second set of lessors be brought in and compelled to interplead for the fund. The trial court on first hearing dismissed the second lessors from the case, and this judgment was affirmed in the circuit court of appeals, Judge Sanborn saying:

"First. No case for an interpleader can be made, unless the adverse claimants seek to recover the same thing, debt or duty. Second. No case for an interpleader can

be made where the holder or debtor has made an independent, personal agreement with some of the claimants regarding the subject matter claimed, so that he is under a liability to them beyond that which arises from the title to the subject matter. The statutes of Arkansas in force in the Indian Territory do not abrogate, but emphasize, these rules. They provide a summary method by which where it appears 'in any action upon contract or for the recovery of personal property that some third party without collusion with him (the defendant), has or makes a claim to the subject of the action, and that he is ready to dispose thereof as the court may direct,' the court may order that the third party shall appear and maintain or relinquish his claim against the defendant. (Mans. Dig. Ark., par. 4947.) Statutes of this character are in force in England and in many of the states, and are universally held to introduce no new cause of interpleader. (St. 1 and 2, Wm. IV, c. 58; *Belcher v. Smith,* 9 Bing. 82; *Pustet v. Flannelly,* 60 How. Pr. 67-29; *Johnson v. Maxeu,* 43 Ala. 521-541.) In *Belcher v. Smith, supra*— a case which arose under an English statute much more comprehensive than the Arkansas statute before us—the court declared that 'our duty is to see that the party applying for the exercise of our discretion has not voluntarily put himself into the situation from which he calls on the court to extricate him.'

"The reason for and the necessity of a strict enforcement of the second rule is obvious. Parties claiming title to the thing in dispute ought not to be, and cannot properly be, compelled to litigate any rights but those in controversy between themselves. If the holder of the subject matter in dispute has placed himself under an independent personal obligation to one or more of the claimants, by which his liability to deliver the thing or pay the debt in question may be determined without a decision of the controversy between the claimants, it is plain that no litigation between the latter can ascertain the rights of the holder or debtor upon his personal obliga-

tion. Nor does the fact that the latter claims that his personal agreement was obtained by the fraud or misrepresentation of the obligee relieve the embarrassment, or except the case from this rule. The question presented by such a claim arises entirely between the parties to the personal obligation of the holder or debtor. It is nothing to the other claimants nor are they interested in, or proper parties to, the litigation over it. It would be a monstrous proposition that one who makes agreements with two persons to sell and deliver the same article to each of them, could bring the article into court, and compel the two purchasers to litigate the question which had the better right to the thing, before either could recover it of him, or that a tenant of an owner could take a second lease of the same premises from one claiming title to them, and then compel the real owner and the pretended owner to litigate, not only the title to the premises, but the validity of the leases the tenant himself had taken, before either lessor could recover his rent. If such a proposition could be sustained, any tenant might treat his landlord to as many suits as he could obtain leases of his premises.

"These independent personal obligations of the defendant to the adverse claimants to this mine, make it impossible for it to present any case for an interpleader here. If it has fallen into a pit of its own digging, the courts cannot make the interpleader its substitute. * * * Moreover, the plaintiffs and the interpleaders do not claim to recover the same debt from the defendant. If A makes one promissory note for $500.00, dated October 1, 1890, payable to the order of B and C six months from its date, and another, for the same amount, dated January 25, 1891, payable to the order of B and D twenty months from its date, and the respective payees sue the makers on their respective notes, it is absurd to say that B and C claim to recover of A the same debt as do B and D. The case here presented is yet stronger for the interpleaders. The plaintiffs claim to recover a debt which the

defendant promised to pay to Davis, Stanley, Phillips and Nelson by the lease of October 1, 1887, for the term of six years, with a privilege of twenty years more. If the interpleaders claimed, by assignment or otherwise, to recover any part of the debt due under that lease, there would be a proper case for an interpleader. But they do not. Davis and Nelson both repudiated that lease, and expressly disclaimed any rights under, or interest in it, The only claim of the interpleaders is that the defendant owes them rent due under the lease to Adams, Davis, James, Hodges and McBride, dated January 25, 1888, for a term of twenty years from that date. Thus the plaintiffs and interpleaders respectively claim to recover of the defendant no part of the same debt, but two independent debts arising under independent leases, of different dates and different terms, payable to different lessors.

"Nor can the interpleaders be held as parties defendant to this action under the Arkansas statute in force in the Indian Territory, which provides that: 'Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination of the questions involved in the action.' (Mansf. Dig. Ark. Par. 4940, sec. 3908 Oklahoma Statutes. )

"The only controversy it is necessary to decide in order to determine the action between the plaintiffs and defendant is that over the validity of the lease of October 1, 1887, between them. In that controversy the interpleaders neither have nor claim any interest. It can be, and in fact it must be, completely determined in an action between the plaintiffs and defendant, because they are the only parties interested in the question. Its decision in the action between them cannot in any way determine or affect the rights of the interpleaders against the defendant, or of the defendant against the interpleaders, under the lease between them of January 25, 1888, or the rights of the plaintiffs and the interpleaders against each

other to the title to the mine, and hence the latter are neither necessary nor proper parties to plaintiffs' action on their lease." (*Atoka Mining Co. v. Hodges*, 59 Fed. 841-843.)

In *Natl. Life Ins. Co. v. Pingrey*, 141 Mass. 411, 6 N. E. 93, the insurance company had in 1874 issued to Franklin Pingrey a policy on his life, in favor of his mother, Elizabeth Pingrey, who paid the premiums. In 1882 the insured surrendered that policy, and received a new one designated as a continuation of the other, but payable to Clara Pingrey, the insured's wife. On the death of the insured, the insurance company filed its bill to compel the two beneficiaries to interplead. The supreme court of Massachusetts said:

"The questions arising between the plaintiff and the different defendants cannot all be tried in an issue between the two defendants alone. The mother claims to be entitled under the first policy. The widow claims under the second policy. By issuing the two policies the plaintiff has exposed itself to both of these claims, and must meet them as best it may. The difficulty of maintaining the bill of interpleader is not technical, but fundamental. In this form of proceeding, we cannot inquire whether the plaintiff has incurred a double liability. That result is possible. The plaintiff ought to be in a position to be heard upon that question; but on a bill of interpleader, which assumes that the plaintiff is merely a stakeholder the plaintiff cannot be heard. (*Houghton v. Kendall*, 7 Allen, 72.) A plaintiff cannot have an order that the defendants interplead, when one important question to be tried is whether by reason of his own act he is under a liability to each of them. (*Cochrane v. O'Brien*, 2 Jones & L. 380; *Desborough v. Harris*, 5 DeG. M. & G. 439; *Baker v. Bank*, 1 C. B. [N. S.] 515; Story Eq. Pl. par. 91 *et seq.*, Pom. Eq. par. 1320 *et seq.*) Bill dismissed."

In *Conley v. Ins. Co.*, 67 Ala. 472, which was an exactly similar case, the court said:

"It is not every case in which a party may be liable to double vexation, or in which, by different or separate interests, two or more persons claim of him the same thing, or the same debt or duty, that a court of equity will come to his assistance, and compel the claimants to interplead. The party must show that he stands not only indifferent between the claimants, that he is without interest in the controversy to be waged between them, but it must also appear that he is in the relation of a mere innocent stakeholder or depositor, and that by no act on his part the embarrassment of conflicting claims and the peril of double vexation has been caused. When he stands to either of the parties in the relation of a wrongdoer, or it appears by his own act or conduct double claims have been caused, he is not innocent, he is not without interest, and the court will not intervene to relieve him from the embarrassment in which he has voluntarily involved himself. (*Shaw v. Coster*, 8 Paige, 339, 35 Am. Dec. 69; *Quinn v. Green*, 1 Ired. Eq. 229; *Crawshay v. Thornton*, 2 Myln. & C. 1; *Sublichich v. Russell*, L. R. 2 Eq. 441.) * * * If there is embarrassment of conflicting claims, and the insurance company stands in peril of double vexation, and double liability for the same debt or duty, it is obvious the embarrassment and peril spring from its own voluntary acts and conduct, and not from the acts and conduct of either of the claimants. * * * The insurance company by making the change in the policies, has given rise to the rival claims upon it, and has committed a wrong against the original beneficiaries. It is not the office of a court of chancery to relieve them from the consequences of the wrong, or the double liability incurred by their erroneous conduct. Nor can it be just that the courts should intervene and compel litigation between parties who, it may be, have each valid claims against the company, and no cause of controversy between themselves. * * * If there be any peril of

double vexation for the same debt or duty; if there are, in fact, conflicting claims, they have their origin and life in the conduct, in the act of the insurance company, not in the act or conduct of either of the claimants, and it is against their acts, and not its own, the insurance company can ask relief. * * * The company has a direct personal interest, according to the averments of the bill, in defeating the claim of one or the other of the defendants, and having that interest, has no right to an interpleader."

In *Bechtel v. Shafer,* 117 Pa. St. 555, 11 Atl. Rep. 889, the court say:

"It is true as a general rule, the party seeking relief by an interpleader must not have incurred any independent liability to either of the rival claimants; if he has expressly acknowledged the title or right of one of them, and agreed to hold the property for him, or, disregarding the adverse claim of one, has by contract made himself liable in any event to the other, he cannot be said to stand indifferent between them."

The rule so announced was followed in *DeZouche v. Garrison,* 140 Pa. St. 430, 21 Atl. Rep. 450.

In *James v. Pritchard,* 7 M. & W. 215, plaintiff sued in debt to recover for a rick of hay sold defendant. The plea of defendant was that he had contracted with plaintiff for the hay, but had been notified by one Saunders, administrator of Simlett, that the hay belonged to his intestate. Plea asked that plaintiff and Saunders be compelled to interplead (upon a practice similar to ours), but Baron Alderson denied the application, saying tersely: "I think the rule must be discharged, and that this is not a case within the interpleader act. The defendant has made a bargain with the plaintiff, and he must perform it or show good cause why he does not." Applying those facts and the legal principle just announced, it seems that

here Williamson has promised Goodrich to pay $5,000.00 on the note in suit, but has been informed by the intervenor that it would charge him with a fraud in the execution of that note. We can easily imagine what the eminent Baron Alderson would say, were he tryng this case. His judgment would be: "The defendant has made a bargain with the plaintiff, and he must perform it or show good cause why he does not." (3 Pomeroy Eq. Jur. Par. 1326; *Wakeman v. Kingsland,* 46 N. J. Eq. 113; *Atkinson v. Munks,* 1 Cow. [N. Y.] 691.)

Mr. Freeman, in a note to the case of *Shaw v. Coster,* 35 Am. Dec. 690, sums up the doctrine thus:

"If a party by his own folly or inadvertence, or even through misfortune, becomes liable to deliver the same property, or to pay the same debt to two different claimants, he cannot relieve himself from the predicament by interpleader."

It is also contended that the claims of all the parties must be strictly legal and that equitable claims are not within the statute.

Upon this proposition, it is said by Judge Story in his Equitable Jurisprudence, sec. 822, that:

"An issue or a direction to interplead at law, would be obviously improper in all cases, except those where the titles on each side are purely legal. Equitable titles can only be disposed of by courts of equity."

We think for the reasons and upon the authorities herein stated, that the court erred in permitting the intervention of the defendant, Williamson, and in permitting him to pay the money into court, to take the note from the possession of Goodrich, and be discharged from further liability, and that the order of the court so discharging Williamson should be reversed, and that the

intervention of the Oklahoma National bank should be dismissed, and judgment entered for the amount of principal and interest found to be due upon the note sued upon at this time. It is so ordered.

Burwell, J., who was of counsel, not sitting; all of the other Justices concurring.

NOTE.—On petition for rehearing the foregoing case was affirmed in part and modified in part. The opinion follows: