## CLEVENGER v. LEWIS.

No. 1935, Okla. T. Opinion Filed April 15, 1908.

(95 Pac. 230.)

1.  **SALE—Warranty of Title.** A sale of personalty in the vendor's possession implies a warranty as to the entire title, protecting against partial defects, liens, charges, and incumbrances by which the title transferred is rendered anything less than full, perfect and unincumbered.

28.  **SAME—Action on Warranty—Burden of Proof.** When there is an outstanding mortgage, and the mortgagor obtains possession of the property by writ of replevin, the vendee is not required to await the final adjudication of the mortgagee's claim before beginning action upon the implied warranty; but, in such event, the burden would be upon the vendee to prove a valid pre-existing mortgage in such mortgagor before he could recover on such warranty.

(Syllabus by the Court.)

*Error from Probate Court, Canadian County; before J. J. Phelps, Judge.*

Action by Warren H. Lewis against O. M. Clevenger. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

"On the 1st day of January, 1904, for value received, I prom-plaintiff, commenced this action in the probate court of Canadian county, Okla. T., against O. M. Clevenger, as defendant. Said action was based upon a certain promissory note in *haec verba*:

"$239. 81.                    Calumet, O. T., Aug. 28th, 1903.

"On the 1st day of January, 1904, for value received, I promise to pay C. W. Lewis or order two hundred thirty-nine 81-100 dollars, with interest at the rate of 10 per cent. per annum, payable annually. Payable at Calumet, O. T. And it is agreed that, if the interest or principal is not paid when due, it shall bear interest at the rate of eight per cent. per annum, and the whole sum shall become due and payable at the option of the holder if the interest be not paid within thirty days after due. It is also stipulated that, should proceedings be commenced to enforce the collection of this note by law, a reasonable amount shall be allowed as an attorney fee, and the same shall be taxed as costs in the cause. The amount of this note being less than three hundred dollars, I hereby consent and agree that a justice of the peace shall have full and complete jurisdiction thereof in case suit is brought.                              "O. M. CLEVENGER.

Indorsed: "Nov. 3, 1903. Pay to order of Warren H. Lewis C. W. Lewis."

On November 9, 1905, defendant filed his first amended answer. On the 11th day of November, 1905, A. Baird, as assignee of C. W. Lewis, filed his interplea, alleging that he was the duly qualified and acting assignee of C. W. Lewis, under a general assignment for the benefit of creditors made on the 5th day of September, 1903, and that the said assignee was and is the owner of said note and deed evidenced thereby described in plaintiff's petition, and that the alleged sale and indorsement of the same to the plaintiff was without consideration, and not *bona*

*fide*; that the said sale, indorsement, and delivery of said note was made in contemplation of said general assignment and judgment by said defendant, and so made in order to place the same out of the reach of the creditors of said C. W. Lewis. Wherefore said interpleader asked that he be adjudged to be the owner of said note. Thereafter, on the 13th day of November, 1905, the said plaintiff moved the said court to strike the said interplea from the files, for the reason that the said assignee did not show any interest in the subject-matter of the litigation. The record does not show that said motion to strike said interplea from the file was ever acted upon. Thereafter, on the same day, to wit, the 13th day of November, 1905, the plaintiff filed a motion to require defendant to make his amended answer more definite and certain. And thereafter on the 18th day of November, 1905, the defendant filed his second amended answer, wherein he, except as thereinafter expressly admitted, denied all and singular all of the allegations in plaintiff's petition. Further, said defendant admitted the execution of the note sued on, and further alleged that about May, 1902, C. W. Lewis, heretofore referred to as the original payee in said note, was in the possession of and claimed to be the owner of 63 head of Aberdeen-Angus cattle, which were described in a certain chattel mortgage, executed on the 9th day of January, 1902, to secure the sum of $2,048.38 by the said C. W. Lewis to a firm named Allen-Dudley & Co. A copy of said mortgage was attached and marked "Exhibit A." The same was filed for record on the 11th day of January, 1902.

Defendant further alleged in said answer that said C. W. Lewis then and there represented and stated to him that he was the absolute owner of said cattle, and that they were free and clear of all incumbrances, and that he had a good and valid right to sell and convey the same, and solicited said defendant to purchase an undivided one-half interest therein for the sum of $1,945.15, to be paid by a promissory note bearing interest at the rate of 8 per cent. per annum and due one year after date, and

that the defendant relied upon the statements and representations of said C. W. Lewis, believing same to be true, and without any knowledge whatever of said incumbrance, and relying upon the representation of said C. W. Lewis that he was the absolute owner of said cattle, and had a good and lawful right to sell and convey the same, and that said cattle were free from all incumbrance, said defendant was induced to and did execute and deliver to the said C. W. Lewis his promissory note for the sum of $1,945.15, dated May 28, 1902, payable one year after date, with interest at the rate of 8 per cent. per annum, the consideration for said note being an undivided one-half interest in said cattle.

The defendant further alleged that he spent large sums of money in caring for said cattle, a portion of which sum so expended by the defendant was evidenced by a promissory note executed to the said C. W. Lewis dated April 28, 1903, in the sum of $666.02; that thereafter the defendant purchased of said C. W. Lews an undivided one-half interest in a certain number of head of horses, and executed in payment thereof to the said C. W. Lewis his promissory note, wherein he agreed to pay to said C. W. Lewis the sum of $600 on demand, with interest at the rate of 10 per cent. thereon; that no demand was made by said C. W. Lewis, or any other holder thereof, until the 28th day of August, 1903, on which date the said C. W. Lewis renewed and extended the same by surrendering up the old notes and taking in lieu thereof defendant's two promissory notes, one for the sum of $1,945.15, dated on the 1st day of June, 1904, bearing interest at the rate of 8 per cent. per annum, and another for the sum of $666.02, due on the 1st day of June, 1904, bearing 10 per cent. interest, and at the time, and as a part of the same transaction, at the request of the said Lewis, the defendant, to cover the accumulated and earned interest on said notes, executed to the said Lewis the promissory note upon which this action is based, and the sole and only consideration moving from said C. W. Lewis to said defendant was the accumulated interest on said notes as aforesaid.

Defendant further alleged: That at all times said C. W. Lewis was a resident of the state of Iowa. That on the 5th day of September, 1903, the said C. W. Lewis became insolvent, and in the said state of Iowa executed a general deed of assignment for the benefit of his creditors, wherein he assigned to one A. Baird all of his property, real and personal, situated in said state and in the territory of Oklahoma, in trust for the benefit of all his creditors in accordance with and as approved by the laws of the said state of Iowa. That said assignee under said deed came into possession of said notes, and took the possession of, and assumed the management and control of all of, the real and personal property of said C. W. Lewis save and except the note upon which this action is based. That thereafter the said Allen-Dudley & Co., of Omaha, Neb., began in the district court of Canadian county an action in replevin against the defendant and said assignee to recover possession of said 63 head of cattle under and by virtue of said mortgage heretofore referred to, and in said action obtained the possession of said cattle. Thereafter, in the month of July, 1904, the said Baird, as assignee, Allen-Dudley & Co., and this defendant, settled and adjusted said matters hereinbefore mentione, and the said Baird obtained possession of said cattle, together with all their increase, and sold the same at public sale, and paid off and discharged from the proceeds of said sale the mortgage indebtedness due the said Allen-Dudley & Co., and paid off and discharged from the proceeds of said sale said mortgage debt, and agreed with the defendant, in consideration of the defendant making no opposition to said sale, nor any opposition to the application of the proceeds thereof, to surrender and deliver to the defendant all the notes and obligations of the defendant to said C. W. Lewis. That the defendant received no part of the proceeds of said sale nor derived any benefit therefrom.

Defendant further alleged that he had no actual knowledge or no actual notice of the existence of said mortgage on said cattle until the service of the writ of replevin in said action; that the

said C. W. Lewis parted with nothing, and the defendant received nothing for the execution of the notes mentioned and described in plaintiff's petition; that the defendant derived no benefit from the possession of said cattle, nor from the increase thereof, but was damaged and injured thereby, losing the money expended by him for feed, caring for said cattle for a period of nearly two years, as well as his time and labor caring for the same, and that the defendant would not have purchased said cattle had he known of the existence of said chattel mortgage, and had he not been deceived by the said C. W. Lewis as aforesaid; further, that the consideration for the execution of said note has wholly failed.

The defendant further alleged that the said C. W. Lewis was indebted to him in the sum of $1,000, and was so indebted to him in said sum on the 3d day of November, 1903, the date on which the plaintiff alleged he became the owner of the note sued on; that from and after the 28th day of May, 1902, the said C. W. Lewis and said defendant voluntarily associated themselves together as general partners under the firm name and style of Lewis & Clevenger.

Defendant further alleged that when the said notes mentioned and described in said chattel mortgage became due the said Allen-Dudley & Co. extended the same by permitting the said C. W. Lewis to execute a new and additional chattel mortgage to cover the identical cattle, and same was held as collateral to the original security. Defendant set out the copy of the agreement between the said assignee and himself by whch said assignee obligated himself to interplead for said note. Said parties have been referred to herein as they appear in the court below.

On September 1, 1905, plaintiff filed reply to the second amended answer, denying every material allegation therein contained; and thereafter, on the same date, plaintiff moved for judgment against the defendant on the pleadings therein filed; and thereafter, on the 11th day of January, 1906, motion for judgment on the pleadings was taken up and argued before the court.

and the court rendered judgment thereon in favor of the plaintiff; to which action of the court the defendant duly saved his exceptions, and the action is now properly before this court on petition in error.

*J. W. Clark* and *William H. Criley,* for plaintiff in error.
*Blake, Blake & Lowe,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). The note upon which this action is based, containing a provision for a reasonable attorney's fee, if collected by suit, is not negotiable. *Randolph v. Hudson,* 12 Okla. 517, 74 Pac. 947; *Cotton et al. v. Deere Plow Co.,* 14 Okla. 605, 78 Pac. 321. A sale of property in the vendor's possession implies a warranty of title. 2 Benjamin on Sales (Corbin's Ed.) p. 829 and authorities cited under footnote 18; 2 Mechem on Sales, § 1302, and authorities cited under footnote No. 3.

"The warranty of title which is implied is a warranty as to the whole title, and it, therefore, protects against partial defects, liens, charges, and incumbrances by which the title transferred is rendered anything less than full, perfect, and unincumbered." (2 Mechem on Sales, § 1304; *Hodges v. Wilkinson,* 111 N. C. 56, 15 S. E. 941, 17 L. R. A. 545; *Dresser v. Ainsworth,* 9 Barb. [N. Y.] 619; *Hall v. Aitkin,* 25 Neb 360, 41 N. W. 192; *Close v. Crossland,* 47 Minn. 500, 50 N. W. 694; *Electro-Dynamic Co. v. The Electron,* 74 Fed. 689, 21 C. C. A. 12, 45 U. S. App. 16)

In the case of *Hodges v. Wilkinson, supra,* it is said:

"It necessarily follows that it was sufficient for the plaintiff to show that Wahab had title to the horse in controversy by virtue of the mortgage when Wilkinson sold to the former, and that the horse had been seized and the possession of him acquired by Wilkinson by virtue of the warrant in the claim and delivery proceeding brought against the plaintiff. Upon principle it was no more necessary for Hodges to waive the recovery of Wahab in the pending action that it would have been to prosecute an unsuccessful suit against Wahab, had the latter acquired the possession by bridling the horse while it was straying in the public high-

way, and without objection from any person." (*Coble v. Wellborn,* 13 N. C. 388.)

The court further says:

"If Hodges had actually surrendered the horse to Wahab on demand, or if he agreed to give no trouble if claim and delivery proceedings were instituted still he had the burden on him of showing the title in Wahab, with the advantage to the defendant of having the opportunity to meet and contradict, if he could, the testimony offered to prove title in him, which he could not have done in the suit already instituted against Hodges.  *  *  * If Hodges offered testimony insufficient to satisfy the jury that Wahab had paramount·title, then Wilkinson, by implication at least, must have falsely warranted the title to the horse, and would have no ground of complaint if Hodges had surrendered possession to the true owner on being convinced of his right, and even with the assurance from Wahab that he would not insist on his rights in case the plaintiff should fail to recover in this action. The plaintiff, in order to show paramount title as well as possession in Wahab, offered a chattel mortgage dated May 9, 1885, executed by W. H. Green to Harriet Cohen, which had been regularly registered and proven in Hyde county. After objection the court admitted the chattel mortgage, except the writing on the margin of it purporting to be an assignment of the mortgage by Harriet Cohen, which plaintiff proposed to prove subsequently."

We conclude that a warranty of title is implied in the sale of chattels in the actual or constructive possession of the vendor to vendee buying in good faith, honestly believing he is obtaining a clear title to the same. Further, when there is an outstanding mortgage title, lien, or incumbrance, and the mortgagee obtains or demands possession of such property, the vendee is not required to force the party setting up such adverse claim, lien, incumbrance, or title to reduce the same to final judgment or adjudication in a court of proper jurisdiction before bringing action upon the implied warranty, in which event the burden would be upon such vendee to prove a superior title, lien, or incumbrance in another in such action against the vendor. In this record, whilst the defendant's answer is not as clear and specific as it might have been, yet, without renewing the motion to make the

second amended petition more definite and certain, judgment should not have been rendered for plaintiff on the pleadings.

The records show that the lower court never passed on the motion to strike the interplea from the files. The interplea alleges that the said assignee of the estate of C. W. Lewis is the equitable owner of said note, and entitled to convert the same to the use of said estate for the benefit of the creditors thereof. The legal title is in the plaintiff. Where the intervener voluntarily appears and asks to intervene and have his rights determined in said cause, it is certainly within the power of the court to permit it. This jurisdiction ought always to be exercised to the ends of the furtherance of justice. At common law the remedy would have been by suit in equity to set aside the transfer of said note and injunction to restrain the plaintiff from proceeding to final judgment until the action for the cancellation of such assignment had ben finally determined. Section 4239, Wilson's Rev. & Ann. St. 1903; *Goodrich v. Williamson et al.*, 10 Okla. 588, 63 Pac. 974; 2 Beach, Equity Jurisprudence, § 883.

Since the assignee reserved no exceptions to the action of the court below, and has not joined in the prosecution of this appeal, this cause could not be reversed on that ground; but for the error in rendering judgment on the pleadings in favor of the plaintiff this cause is reversed and remanded for a new trial.

All the Justices concur.