## DE NOYA v. HILL INV. CO.

No. 2207 Okla. Ter.   Opinion Filed May 12, 1909.

Rehearing Denied October 1, 1912.

(127 Pac. 444.)

1. **INDIANS—Actions—Jurisdiction—"Reservation."**   The following language of the act of Congress approved June 7, 1897, 30 St. at L. 71, c. 3: "And the justices of the peace and the probate courts in and for the territory of Oklahoma shall not have jurisdiction of any actions in civil cases against members of the Osage and Kansas Tribes of Indians, residing on their reservation in Oklahoma Territory, and the district court shall have exclusive jurisdiction in such actions, and at least two terms of such court shall be held in each year at Pawhuska, on said reservation, * * *" fixed the territorial jurisdiction of the district court at Pawhuska in a civil action in which a member of the Osage and Kansas Tribes of Indians is a party defendant as being coextensive with the territorial limits of the Osage reservation, and such language was not intended to require that the Indian defendant must reside upon lands the Indian title to which had not been extinguished.

2. **SAME.**   The district court at Pawhuska, under said act of Congress (Act June 7, 1897, 30 St. at L. 71, c. 3), had jurisdiction of a civil case the defendant to which was a member of the Osage Tribe of Indians residing in the town of Pawhuska on a lot the Indian title to which had been extinguished.

3. **SAME—Contracts—Enforcement.**   The provisions of the act of Congress approved March 3, 1901 (chapter 832, 31 St. at L. 1065), providing for the determination and adjustment of the accounts of Indian traders with the Osage Indians at the Osage agency, and for the payment of such accounts by the Secretary of the Interior out of the per capita amount of said Indians which had been collected as rent of pasture lands and accumulated interest other than the regular annuities of such Indians, afforded to such Indian traders a cumulative remedy for the collection of their accounts against the Osage Indians, and did not oust the district court at Pawhuska of jurisdiction in an action on a note by an assignee thereof executed by an Osage Indian to an Indian trader, instituted on the 6th day of March, 1907, where such note had

not been presented by the payee therein, or by his assignee, to the Secretary of the Interior .for adjustment, allowance, and payment under the provisions of said act.

(Syllabus by the Court.)

Kane, C. J., dissenting.

*Error from District Court, Fourth District, of the Territory of Oklahoma, Sitting at Pawhuska, within and for the Osage Indian Reservation; Bayard T. Hainer, Judge.*

Action by the Hill Investment Company against Clement De Noya. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action on a promissory note originally brought in the territorial district court of Pawhuska by defendant in error against plaintiff in error. The facts upon which it is based are substantially as follows:

For some time before the 29th day of September, 1900, one Johnson and one McLaughlin, doing business under the firm name of Johnson & McLaughlin, were licensed Indian traders on the Osage Indian reservation, with their principal place of business at the city of Pawhuska. On the 29th day of September, 1900, Clement De Noya, plaintiff in error, an Osage Indian, was indebted to said Johnson & McLaughlin on open account for goods, wares, and merchandise sold to him by said partnership in the sum of $447.88. On that date plaintiff in error executed and delivered to said partnership his promissory note due December 15, 1901, in settlement of his account. On or about June 1, 1901, Johnson & McLaughlin assigned and transferred said note to the Hill Investment Company, defendant in error, a corporation, of the state of Kansas. This action was instituted by defendant in error on the 6th day of March, 1907. At that time, and at the time of the trial of the case in the lower court, which occurred on the 29th day of May, 1907, plaintiff in error was a resident of the city of Pawhuska, and resided with his family upon property purchased from the United States government under the provisions of the Osage townsite bill (Act March 3, 1905, c. 1479, 33 St. at L. 1061). The trial in the lower court

resulted in judgment in favor of the defendant in error and against plaintiff in error for the sum of $575.05. From this judgment plaintiff in error appealed by proceeding in error to the Supreme Court of the territory, where the proceeding was pending at the time of the admission of the state, and is now before us for final disposition under the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 St. at L. 267). Other facts important to the consideration of the proposition as involved in the appeal will be stated in the opinion.

*Grinstead & Mason,* for plaintiff in error.

*Preston A. Shinn,* for defendant in error.

HAYES, J. (after stating the facts as above). The first assignment of error urged goes to the jurisdiction of the trial court. Subsequent to the organization of the territorial government in the territory of Oklahoma and prior to June 7, 1897, the Osage Indian reservation was, by order of the Supreme Court of the territory, attached to Pawnee county for all judicial purposes. On the last-mentioned date an act of Congress was approved which contains the following provision:

"And the justices of the peace and the probate courts in and for the territory of Oklahoma shall not have jurisdiction of any action in civil cases against the members of the Osage and Kansas Tribes of Indians residing on their reservation in Oklahoma Territory, and the district court shall have exclusive jurisdiction in such actions and at least two terms of court shall be held in each year at Pawhuska in said reservation at such times as the Supreme Court of said territory shall fix and determine for the trial of both civil and criminal cases." (Act June 7, 1897, c. 3, 30 St. at L. 71.)

This statute conferred upon the district court at Pawhuska exclusive jurisdiction of civil cases in which a member of the Osage or Kansas Tribes of Indians who resided on the reservation was a defendant. By a provision of the General Indian Appropriation Bill, approved March 3, 1905, the creation of a townsite commission to be known as the Osage Townsite Commission was authorized, and said commission was directed to plat and survey into streets, alleys, lots, and blocks certain lands

located in the Osage Indian reservation and to sell the same. The lands designated by the act included the town of Pawhuska. 33 St. at L. 1061. Under the provisions of this act, the townsite of Pawhuska was platted and surveyed, and the lots therein sold and title thereto conveyed to the purchasers. Plaintiff in error was one of such purchasers, and at the time of the institution and trial of this case in the court below resided on lots in the city of Pawhuska, the title to which he had acquired from the government under the provisions of said act. It is the contention of plaintiff in error that the conveyance by the government of the title to the lots comprising the townsite of Pawhuska to the purchasers thereof had the effect to destroy the character of the territory comprising the townsite as an Indian reservation, and that, after said event, the townsite of Pawhuska was no longer a part of the Osage and Kansas Indian reservation, and that an Osage Indian residing in said town was not within the terms and provisions of the act of 1897 conferring jurisdiction in certain cases upon the district court at Pawhuska. He lays much emphasis upon the fact that this act prescribed that the district court at Pawhuska should have jurisdiction of any action in civil cases against members of the Osage and Kansas Tribes of Indians "residing on their reservation," and contends that "reservation," as here used, is synonymous with "Indian country," and that, when the Indian title to any portion of the reservation became divested, such portion thereupon lost its character as Indian country, and that an Indian residing upon such portion thereby passed from out the jurisdiction of said court.

It is true that at the time of the approval of the Act of 1897 such Indian title to no portion of the lands embraced in the Osage reservation had been extinguished. Owing to this fact, at the time of the creation of the Pawhuska district court, it would have been impossible for the court to obtain jurisdiction of any civil action in which there could have been as party defendant an Osage Indian who resided upon lands in said reservation to which the Indian title had been extinguished. But such fact in our opinion was due to its physical impossibility, rather

than to any legal inhibition contained in the act.   Congress did not intend, by prescribing that the district court at Pawhuska should have exclusive jurisdiction in civil cases against members of the Osage and Kansas Tribes of Indians residing on their reservation, to require that such jurisdiction should be determined by the character of the title to the land upon which such Indian lived.   The words "their reservation" were intended to fix the territorial jurisdiction of the court created.   It had jurisdiction only in those cases in which a member of the Osage or Kansas Tribes of Indians was a defendant, and such Indian had to be a resident of the territory within the reservation.   Courts are authorized, when the language of a statute is ambiguous or its meaning doubtful, to resort to the surrounding circumstances, the history of the times, and the mischiefs and defects the statute was intended to remedy, to ascertain the intention of the lawmaking body.   *Smith v. Townsend,,* 148 U. S. 490, 13 Sup. Ct. 634, 37 L. Ed. 533.

By section 9 of the Organic Act (Act May 2, 1890, c. 182, 26 St. at L. 85), the territory of Oklahoma was first divided. into three judicial districts.   Later, by act of Congress, the number of districts was increased to five.   Said section of the Organic Act also provided that all territory not embraced in organized counties should be, by order of the Supreme Court, attached to some organized county for judicial purposes.   For some time prior to the approval of the act of 1897, the Osage Indian reservation had been, by order of the Supreme Court, attached to Pawnee county for judicial purposes.   The result of this order was to give the justice, probate, and district courts of Pawnee county jurisdiction of all civil actions arising on said reservation.   Members of said tribes of Indians whose places of residence were on the reservation were required to travel long distances to attend terms of court in which they were sued, and were compelled to litigate their rights away from their homes and among strange people.   It was to remedy this condition that the act was passed.   The purpose of the act is declared by Mr. Chief Justice Burford, in *Goodson v. United States,* 7 Okla. 117, 54 Pac. 423, as follows:

"The only purpose of this act was to provide a court where the Indians could have their rights litigated on their own reservation without being compelled to go to a distant place among a strange people to attend court."

In the same case the court declared that this act made Pawnee county and said reservation one judicial subdivision, and declared that the jurisdiction of the Pawhuska district court as to civil actions was confined to all civil actions arising within said reservation in which a resident member of said tribes of Indians was a party defendant. The word "reservation," as used in the act, fixed the territorial jurisdiction of said court. It was intended by this language to designate the tract of land then embraced within said reservation as a district over which said court had jurisdiction as to Indian defendants in civil actions. It was not intended to require as a prerequisite to jurisdiction in civil actions that there must be, as defendant thereto, some member of said tribes residing upon land the Indian title to which had not been extinguished.

That part of the act which confers jurisdiction in civil cases in which a member of said tribes residing upon the reservation is a party defendant is no more mandatory and explicit than that portion of the act which requires that at least two terms of said court shall be held in each year at Pawhuska "on said reservation." If it was intended by Congress that the word "reservation" should be given the meaning for which plaintiff in error contends, when the town of Pawhuska was surveyed, platted, and sold, there no longer existed the place fixed in the act at which said court could be held, and plaintiff in error could have contended with equal show of reason that the court in the case at bar was held at a place which was unauthorized by law. That Congress intended no such meaning to be given to this language we think is evidenced by a provision in an act approved June 4, 1906, generally known as the "Recording Act," which made the Osage reservation a recording district, and contains the following language:

"And the deputy clerk of the district court at the town of Pawhuska on said reservation shall be *ex officio* register of deeds." (Act June 4, 1906, c. 2573, 34 St. at L. 208.)

This act was passed subsequent to the Osage Townsite Act, providing for the sale of the townsite of Pawhuska and the extinguishment of the Indian title therein, and, if Congress had intended that the word "reservation" should be given the meaning that is contended for by plaintiff in error, it must have known when it passed this last act that no such officer described as deputy clerk of the court located at the town of Pawhuska on said reservation could exist when the services he was required to render would be demanded. If the construction for which plaintiff in error contends is correct, then an Osage Indian who lived in the townsite of Pawhuska would have been required to defend his action in the district court of Pawnee county, whereas his neighbor adjoining him, but just without the townsite of Pawhuska, would have the privilege of defending actions against him in a local court among his own people. Such construction would defeat in a great measure the very purpose of the act. Congress intended by the act to give to the Osage Indians a local court, and compel all civil actions brought against them to be brought in said court. Where the language of the statute is ambiguous, it should be so construed as to give effect to legislative intention. We have carefully examined the numerous authorities cited by plaintiff in error in support of his contention, but do not think they are in point.

The General Appropriation Act, approved March 3, 1901 (Act March 3, 1901, c. 832, 31 St. at L. 1065), contains the following paragraph:

"That the Secretary of the Interior is hereby authorized and directed to examine the accounts of Indian traders with the Osage Indians at the Osage agency, and to determine the sums equitably due to such traders from such Indians, and to adjust their accounts upon a basis of a fair profit upon the goods which have been sold by such traders to such Indians and when the amounts due as aforesaid shall have been determined and adjusted, the Secretary of the Interior is hereby authorized to pay, by a disbursing officer selected by the Secretary for that purpose, to the Osage Indians per capita the amount which has been collected as rent of pasture lands, and any accumulated interest other than their regular annuities which has not been heretofore paid to them: Provided, that when it shall appear to

such disbursing officer, that any such Indian, either as an individual or the head of a family, is indebted to a trader or traders at such agency, as the same shall have been determined and adjusted, in an amount equal to or exceeding said per capita payment, such disbursing officer shall pay the per capita share due to said Indian as an individual or the head of a family to such trader or traders in discharge of, or to be applied upon, such indebtedness to such trader or traders. If such Indian as an individual or head of a family shall be indebted to more ·than one of such traders such payment of his per capita shall be paid to the traders in proportion to the amount of the respective sums due them, as determined and adjusted. If the per capita share of any such Indian as an individual or head of a family shall exceed his indebtedness to said trader or traders, then payment shall be made as aforesaid to such trader or traders of the amount due, as aforesaid, and the balance of such per capita payment shall be paid to the Indians. * * * Should the amount of per capita payment herein authorized and directed be insufficient to fully cancel and discharge the debts found to be due from such Indian to such traders as herein provided, the Secretary of the Interior is hereby authorized and directed ·to make further per capita payments to said Indians whenever and as often as future pasture moneys and accumulations of interest, other than regular annuities, shall amount to the sum of $100,000, the same to be paid and applied in the manner hereinbefore provided."

This act was passed subsequent to the execution of the note sued upon, but prior to its maturity and prior to the transfer of the same by Johnson & McLaughlin to defendant in error. Neither Johnson & McLaughlin nor defendant in error presented this note to the authorized agent of the Interior Department to have determined the sum equitably due thereon and for payment by the disbursing officer of the Interior Department as authorized by said act. It is contended by plaintiff in error that the failure of the owner of the note to present the same to the authorized officer of the Interior Department for allowance and payment now prevents the recovery of defendant in error thereon. This contention constitutes the only defense made by plaintiff in error against defendant in error's right to recover in this action. The payees in the note were licensed traders in the Osage Indian reservation, and the sale of the merchandise made by them to the plaintiff in error for,which he gave the note sued upon was made

under authority of a license from the government. Section 2129 of the Revised Statutes of the United States provides that the Commissioner of Indian Affairs shall have sole power and authority to appoint traders to the Indian tribes and to make such rules and regulations as he may deem just and proper governing such agents and regulating the trade with the members of the tribes. It is not contended that the payees in the note in obtaining said note from plaintiff in error in settlement of his account for goods, wares, and merchandise purchased from them in any way violated any of the rules of the department governing them as Indian traders.    On the other hand, rule 542 of the office of the Indian Commissioner regulating trading with the Indian tribes, introduced in evidence at the trial, provides as follows:

"If credit is given Indians by a trader, he must take the risk of his action.    No assistance in the collection of alleged claims will be given him by the agent.    But whenever any Indians obtain goods of licensed traders on credit, they are expected to pay for the same promptly in the manner and at the time agreed upon."

Prior to the passage of the General Indian Appropriation Act of 1901, no remedy was afforded to Indian traders in the Osage Indian reservation by which they could subject the funds held in trust by the government of the United States for the members of said tribe to the payment of accounts or indebtedness due them by the members of the tribe, nor under the rules of the Interior Department would said department lend its assistance to the Indian traders in procuring the payment of such funds upon said indebtedness.    The only remedy afforded to Indian traders against delinquent customers who refused payment of their indebtedness was to resort to the courts and obtain judgment and enforce payment of the same against such property as the Indian might have (other than the property held in trust by the United States) that was subject to execution.    Under the provisions of the act of 1897, such actions could be brought in the district court at Pawhuska, as the action in the case at bar was brought.    But it is the contention of plaintiff in error that the foregoing provision of the act of March 3, 1901, afforded to defendant in error an exclusive remedy for the collection of its

claim, and that said act repealed the right of defendant in error to resort to said tribunal for an adjudication and enforcement of its claim.

Much has been said in the briefs of the power of Congress to regulate trade and intercourse with the Indian tribes and of the lack of power of Congress to pass laws that impair lawful private contracts. We think, however, that the second assignment of error also presents only a question of statutory construction, to wit, Did the act of 1901 furnish to the licensed traders with the Osage Indians a cumulative remedy for the collection of debts due them by such Indians, or did it afford an exclusive remedy? If the remedy was exclusive, then said act had the effect to oust the jurisdiction of the territorial district court at Pawhuska in actions to enforce the payment of such debts. But the presumption is against an intention of the lawmaking body to take away the jurisdiction of a superior court. 26 Am. & Eng. Ency. of Law, p. 645. And a statute that merely gives an affirmative jurisdiction to one court will not be construed as ousting a jurisdiction existing in another court when such jurisdiction is not taken away by express terms or by necessary implication. An existing remedy for an existing right is not destroyed by a new remedy, for an existing right is not destroyed by a new remedy for the same right where a repeal of the existing remedy is not made by express words or by necessary implication. The new remedy is cumulative. These rules of statutory construction are well established, and are fundamental. The provisions of the act of 1901 quoted above contain no express words ousting the jurisdiction of the district court at Pawhuska in actions like the one at bar. The Secretary of the Interior is authorized by said act to make payments out of the trust funds belonging to the Osage Indians on the indebtedness of such Indians to licensed traders on the reservation. He is not authorized, however, to pay to such traders on the indebtedness of such Indians more than any such Indian debtor's individual share of said trust fund or the share to which he is entitled as the head of a family. The statute further requires that any creditor of such Indian who desires to have applied the pro-

portionate share of the fund to which such Indian is entitled to the payment of debts which such trader holds against the Indian must submit his claim to the Secretary of the Interior to adjust the same upon an equitable basis. This fund, under the statutes and under the rules of the United States Indian Office, had never been before available to the creditors of the Indians for the purpose of applying the sum to which such Indian debtor was entitled to the payment of his debts. The Indian trader could go into the courts and obtain judgment against such Indian debtor, and could enforce the judgment by execution on property owned by the Indian debtor other than the trust property held for the tribe by the United States government. The act in question gives the Indian trader a new remedy, a new means of obtaining payment of his accounts, but it contains no provision prohibiting the Indian from paying such debts out of other funds and property he may possess than the trust fund held by the United States government, nor does it by express words or by implication prohibit the creditor from collecting such debts by other means and from other property than that provided for in the act. Such provision of the act was primarily for the benefit of the Indian traders to enable them to enforce the application of the Indian's annuities to the payment of debts that he owed them. The purpose of conferring upon the Secretary of the Interior the power to adjudicate the claims of such creditors was not to make him a court to try and adjudicate all rights between the Indians and the traders, but was to enable him to protect the Indians against false and fraudulent claims of the traders, where payment was made out of the trust fund. The act further provided that, in order that any trader might avail himself of the opportunity of having his debts paid out of said fund, he must voluntarily surrender such portion of the profits he had charged for the goods, wares, and merchandise he had sold the debtor as the Secretary of the Interior should find unfair. The funds appropriated by the United States government for the payment of such debts by the Secretary of the Interior were out of rents collected from the pasture lands belonging to said tribe and from the accumulated interest on the trust funds of the tribe

other than their regular annuities, which had not theretofore been paid to them. Failure of defendant in error to present his note and collect the same out of this fund was in no way prejudicial to plaintiff in error. Plaintiff in error may have had other creditors. If he did, they could have presented their claims to the Secretary of the Interior and had them paid out of such funds, and the failure of defendant in error to present its claim resulted only in leaving more funds to be applied to the claims of other creditors. And, if any portion of said fund was left after the payment of claims of creditors who presented the same, the remainder, as by the statute provided, was to be paid to the plaintiff in error.

The note sued upon contains a clause providing for the collection of attorney's fees if suit should be instituted to enforce its collection, and it is therefore nonnegotiable. *Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946; *Cotton v. John Deer Plow Co.,* 14 Okla. 605, 78 Pac. 321; *Sullins v. Farmers' Exchange Bank,* 17 Okla. 419, 87 Pac. 857, 10 L. R. A. (N. S.) 839; *Dickerson v. Higgins et al.,* 15 Okla. 588, 82 Pac. 649; *Clevenger v. Lewis,* 20 Okla. 837, 95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56.

This note in the hands of defendant in error is subject to all equities it would have been subject to in the hands of the original payees, but plaintiff in error has set up no equities in his defense, and has made no complaint against the right of defendant to recover other than its leniency.

Finding no error in the record, the judgment of the trial court is affirmed.

WILLIAMS, TURNER, and DUNN, JJ., concur; KANE, C. J., dissenting.