## POTTS v. CRUDUP *et al.*

No. 4424.    Opinion Filed June 8, 1915.

(150 Pac. 170.)

1. **BILLS AND NOTES—Negotiability—Provision for Attorney's Fee.** A promissory note containing the provision, "and agree, in case of suit hereon, to pay reasonable attorney's fees as allowed by law," does not render the amount of the obligation of the note uncertain, under section 4437, Comp. Laws 1909 (section 4052, Rev. Laws 1910), and therefore does not destroy its negotiability.

2. **CORPORATIONS—Authority of General Manager—Notes.** A corporation, doing a mercantile business, executed its negotiable promissory note in payment for goods received, its general manager signing its name thereto, which note was also signed by its president and vice president in their individual capacities as joint makers, and was by them, or with their knowledge, put in circulation as commercial paper. **Held,** that such individual makers cannot, in a suit against them on the note, escape liability on the ground that the general manager was without authority, under the by-laws, to sign the corporate name.

(Syllabus by Brewer, C.)

*Error from District Court, Bryan County;*
*A. H. Ferguson, Judge.*

Action by the Clinton National Bank of Clinton, Iowa, against E. F. Potts and R. L. Crudup. Judgment for plaintiff, and defendant Potts brings error. Affirmed.

*Kyle & Newman,* for plaintiff in error.

*McPherren & Cochran,* for defendant in error Crudup.

*Hatchett & Ferguson,* for other defendants in error.

Opinion by BREWER, C. This case presents a controversy: (1) Between the Clinton National Bank, of Clinton, Iowa, and E. F. Potts and R. L. Crudup, defendants in the court below; and (2) between Crudup and

Potts, as to certain rights and equities existing between themselves, and arising on the cross-petition of Crudup. We will first consider the controversy as between the bank and both defendants.

The suit was brought by the Clinton National Bank, as has been said, against Potts and Crudup as joint makers on a certain promissory note, executed by Grider-Potts Hardware Company, a corporation, which corporation, at the time of the commencement of this suit, was in bankruptcy. The petition avers that the note was executed by said corporation and these defendants and made payable to Fish Bros. Manufacturing Company, who, in due course, before maturity and for value, sold and assigned the same to plaintiff. At the trial, the bank introduced the note in evidence, together with the depositions of its president and another officer, fully and completely establishing the facts alleged in its petition—that it acquired the ownership of said note before maturity, for a valuable consideration, in due course of business, and without any knowledge or notice of defects or infirmities in the same. Both Potts, as plaintiff in error here, and Crudup, in his cross-appeal, argue several reasons in which it is attempted to show that the court erred in directing a verdict in favor of the bank and against each of defendants, as was done. Neither of these contentions has sufficient merit to demand the attention of the court, save and except the one challeging the negotiability of the note, which we shall consider and decide.

The clause which it is claimed renders the note non-negotiable is as follows:

"And agrees in case of suit hereon, to pay reasonable attorney's fee as allowed by law."

This note was executed February 20, 1911. There-
fore its negotiability must be tested under the law in force
at that time, which law is generally known as the Uni-
form Negotiable Instruments Law. Prior to the passage
of this act, it had been uniformly held in this state that a
stipulation for the payment of an attorney's fee contained
in a promissory note, rendered the same nonnegotiable.
*Farmers' Nat. Bank v. McCall,* 25 Okla. 600, 106 Pac. 866,
26 L. R. A. (N. S.) 217; *Clevenger v. Lewis,* 20 Okla. 837,
95 Pac. 230, 16 L. R. A. (N. S.) 410, 16 Ann. Cas. 56;
*Cotton v. John Deere Plow Co.,* 14 Okla. 605, 78 Pac. 321;
*Randolph v. Hudson,* 12 Okla. 516, 74 Pac. 946. But since
the adoption of the present law these decisions are neither
applicable nor controlling, under a proper construction of
the act. The former opinions proceeded upon the theory
that the provision for an attorney's fee, in case of failure
to pay at maturity, rendered the amount finally to be paid
uncertain. This same view had been taken by the Su-
preme Courts of about half of the other states of the
Union, the contrary view prevailing in the other half of
the states; and this condition of conflicting authority, rela-
tive to questions arising out of commercial paper, was
largely responsible for the very widespread and general
effort put forth by the commercial world to secure uni-
formity in the different states in the law relative to nego-
tiable instruments; and our present law on the subject is
substantially the same as that now prevailing in a number
of states. To meet the contention that a provision, such
as we are discussing, does not render a note uncertain as
to amount, it is provided in section 4437, Comp. Laws
1909 (section 4052, Rev. Laws 1910), as follows:

"The sum payable is a sum certain within the mean-
ing of this act, although it is to be paid:  *   *   *   5.

With costs of collection or an attorney's fee, in case payment shall not be made at maturity."

It is admitted here that this note would be negotiable, if the amount of the attorney's fee had been named. But it is contended that as no sum is named, the provision for "reasonable attorney's fee" still has the effect of rendering the sum finally to be paid uncertain, and therefore, notwithstanding the statute, makes the note nonnegotiable. No authority is cited to sustain this contention. On the contrary, plaintiff in its answer brief cites the case of *McCornick v. Swem et al.,* 36 Utah, 6, 102 Pac. 626, 20 Ann. Cas. 1368, as the only case it has found on the precise point involved. In that case, it is held in the syllabus:

"Under Comp. Laws 1907, sec. 1554, providing that a provision in a note for an attorney's fee does not make the amount to be paid uncertain, a provision in a note by which the maker agrees to pay a reasonable sum as an attorney's fee does not render the note nonegotiable. A provision in a note for an attorney's fee, but leaving blank the amount thereof, amounts to a promise to pay a reasonable sum as an attorney's fee." Eaton & Gilbert on Commercial Paper, p. 204; Selover on Negotiable Instruments, p. 59.

On the general proposition under discussion, one of the best arguments we have seen in the books is found in the case of *Montgomery v. Crossthwait,* 90 Ala. 553, 8 South. 498, 12 L. R. A. 140, 24 Am. St. Rep. 832. Although this decision was prior to the adoption in the various states of the uniform negotiable instruments law, yet its reasoning is applicable to the case at bar, and we therefore set out quite freely from that opinion as follows:

"The cardinal principle, that the sum to be paid must be certain in amount, and not dependent upon contingencies, is fully recognized and accommodated in this doctrine. It is true, the stipulation involves a contingency

in that there may or may not be any costs of collection to be paid, depending primarily upon failure to pay the note at maturity, and, secondarily, upon whether the note should be paid, even after dishonor, without resort to attorneys, or legal proceedings. It is true, also, that the amount of such costs, if any, is uncertain. But it is fully assured that no costs will be incurred before maturity, and no costs will have to be paid at all, unless there is default in the payment of the sum promised at maturity; and the paper ceases by reason of that fact alone to be a circulating medium, performing in a sense the functions of money. So that as long as the paper, considered apart from the stipulation, would be negotiable, it will have that character, notwithstanding the stipulation. Looked at in this way, stipulated attorney's fees, and costs of collection after maturity, stand upon the same footing, as to contingency of liability therefor and uncertainty as to the amount thereof, as do protest fees, attorney's tax fees, court costs, and statutory damages in the event a resort is had to legal remedies to enforce payment; and it is not conceivable why the former class of charges should destroy negotiability, while the latter confessedly do not. *Stoneman v. Pyle,* 35 Ind. 103, 9 Am. Rep. 637; *Gaar v. Louisville Banking Co.,* 11 Bush (Ky.) 180, 21 Am. Rep. 209. The Pennsylvania court has said that a 'promissory note is a courier without luggage, traveling on the wings of the wind, and should not be lumbered up' with provisions of the class under consideration. Another high authority has declared that a stipulation for attorney's fees is 'not luggage, but ballast,' and does not clog the circulation of the paper, but facilitates its progress. To further pursue the metaphor, it were, we think, more apt to say that the stipulation is neither luggage nor ballast, and neither impedes nor facilitates the flight of the paper through the transactions of commerce, since all persons are presumed to deal with it upon the assumption that it will be paid at maturity, but is for the well-being of the 'courier,' when its monetary functions have been fully discharged, and

its journey as a circulating medium has been brought to an end by default in payment at maturity."

This point was properly raised and has been presented here, and has been decided in favor of the negotiability of such a note. Yet, under the conceded facts developed in the case, the question of the negotiability of the note in suit was quite immaterial to these defendants. This record fails to disclose that either of them had any defense against this note, had the suit been brought on it by the original payees and without its transfer. It is evident that the defense they sought to interpose was that the note was not executed by the proper corporate officer, to wit, its president, and that the general manager who signed the name of the corporation was without authority to do so. But no claim is made that said note was not given for a valid indebtedness of the corporation, in consideration of goods received by it, and was put in circulation by these defendants, who were president and vice president, respectively, of the corporation, and who signed the note as joint makers with it.

The judgment in favor of plaintiff was right, as against both defendants, and should be affirmed.

As between the two defendants, it is the claim of Crudup that after he and his codefendant Potts had signed the note as joint makers with the corporation, at his suggestion Potts secured from the corporation about $2,000 worth of good commercial paper and held same as collateral to indemnify both defendants against loss on account of the obligation imposed by the note, and that Potts had collected of such notes a sufficient sum to liquidate the note sued upon, and that therefore, having received this money, he should have paid the note with these trust

funds, and since he did not do so, that judgment should go against him in favor of Crudup. On the other hand, Potts claimed that he got the notes from the corporation for the purpose of indemnifying himself against the payment of this and other obligations of the company upon which he was liable; that the notes he received as collateral and indemnity were not taken to protect his codefendant Crudup in any way. The jury accepted Crudup's theory of the matter, and gave judgment in his favor over and against Potts for the entire amount of the note in suit. Mr. Potts brings the case here as plaintiff in error, and sets out in his brief numerous contentions for reversal of the case as between himself and Crudup. The points presented are set out without any regard, apparently, for order or sequence; the contentions as against the codefendants and the common plaintiff being so intermingled as to be confusing. Besides, we find that the brief cannot be fully relied upon; for in it he states his second point as follows:

"Did the court err in instructing the jury to return a verdict for the defendant R. L. Crudup against the defendant E. F. Potts? We insist that it did."

This statement has caused and required a somewhat extended search of the record, which we have made, and at the end we find that no such instruction was given. On the contrary, the dispute between the two defendants was submitted to the jury and passed upon by it under instructions which seem to be clear and to cover the matter fully. The court told the jury on the point as follows:

"The court has already instructed the jury in this case to return a verdict in favor of the plaintiff and against both of the defendants in the sum of $827.02. The court, therefore, instructs you that if you believe and find from the evidence that there was deposited with the said E. F.

Potts notes belonging to the said Grider-Potts Hardware Company by said company as collateral security to insure both of said defendants, or either of them, against loss for any amount they might be required to pay as sureties on the note in controversy, and that the said defendant E. F. Potts, for the amount, or amounts, so collected, not said sum of $827.02, or any part thereof on said notes, then it would be your duty to return a verdict in favor of the said R. L. Crudup and over against the said defendant, E. F. Potts, for the amount, or amounts, so collected, not to exceed the sum of $827.02."

Two or three other instructions, bearing on the contentions of these parties, were given; and, while in them some isolated sentences, stated alone, might be objectionable, yet upon the whole, we think the matter was submitted under substantially accurate instructions, and that no complaint can be made on account of same.

We have examined the evidence and find it on Crudup's contention that Potts received these collateral notes for their joint indemnification and had held and collected money on them was so ample, and, in fact, we might say so overwhelming, that had the jury found on this issue other than as it did, the trial court would probably not have permitted the verdict to stand. As we view the record, there is no escape for Mr. Potts' answering to his codefendant, and for this reason, we shall not examine in detail numerous minor contentions made against the verdict. If some of them are sound, they come under the classification of "errors without injury," for under the evidence, the only just result possible was reached.

Therefore, there appearing no substantial error in the record, the judgment of the trial court should be, in all things and as to all parties, affirmed.

By the Court: It is so ordered.